Jerome JOSHUA, Appellant (Petitioner Below),

v.

STATE of Indiana, Appellee (Respondent Below).

No. 3–383A65.

Court of Appeals of Indiana, Third District.

Aug. 25, 1983.

Rehearing Denied Oct. 3, 1983.

**464**

Susan K. Carpenter, Public Defender, David R. Swinford, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

On June 25, 1980, appellant Jerome Joshua was charged by indictment with felony murder, a class A felony, and robbery, a class A felony. On October 5 and 6, 1981, a jury was impaneled and preliminary instructions were read. Neither party objected to the court's instructions. In front of the jury and in the presence of the appellant, the court read the following instruction:

"To the Indictment in this case the defendants have entered pleas of not guilty, which makes it incumbent upon the State of Indiana to prove to your satisfaction, beyond a reasonable doubt, each and every material allegation of said Indictment.

"The defendants come into Court presumed to be innocent of the charges and this presumption remains with them throughout the trial and until and unless it is overcome by competent proof of guilty beyond a reasonable doubt. The burden of proof in a criminal case is upon the State alone and it never shifts to the defendants.

\*      \*      \*      \*      \*      \*

"A reasonable doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all of the evidence and circumstances in the case. It should be a doubt based upon reason and common sence [sic] and not a doubt based upon imagination or speculation.

"To prove the defendant's guilt of the elements of the crime charged beyond a reasonable doubt, the evidence must be such that it would convince you of the truth of it, to such a degree of certainty that you would feel safe to act upon such conviction, without hesitation, in a matter of the highest concern and importance to you."

The State proceeded to produce evidence in proof of its case against appellant and his co-defendant, Vernon Turman. After the first morning of trial, appellant and co-defendant Turman moved for recess, and the following day they entered guilty pleas to robbery, a class B felony.

Before entering his own guilty plea, appellant witnessed co-defendant Turman's plea of guilty. The court carefully advised Turman of his rights, including the right to have the case against him proven beyond a reasonable doubt. However, in accepting appellant's plea the court failed to similarly instruct on this reasonable doubt standard.

Additionally, the record indicates that the trial court erroneously referred to robbery as a class D rather than a class B felony. The record further establishes that the written plea agreement correctly referred to robbery as a class B felony, and that the appellant understood the minimum and maximum penalties for robbery.

Appellant now challenges the denial of his motion for post-conviction relief, alleging the following errors: .

(1) whether the trial court erred in failing to advise appellant that a guilty plea waived his right to have the State prove his guilt beyond a reasonable doubt; and

(2) whether the trial court erred in erroneously referring to robbery as a class D rather than a class B felony.

Appellant first contends that the trial court's failure to specifically instruct *him*, that a guilty plea waived his right to have the case proven against him beyond a reasonable doubt constitutes reversible error. The Indiana plea bargain statutes specifically provide:

"Plea of guilty—Defendant to be advised by court.—The court shall not accept a plea of guilty from the defendant without first addressing the defendant and

(a) Determining that he understands the nature of the charge against him;

. . .

(c) Informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and *to require the state to prove his guilt beyond a reasonable doubt* at a trial at which the defendant may not be compelled to testify against himself[.]"

(Emphasis added.)

Ind.Code § 35–4.1–1–3 (Burns 1979 Repl.).[1]

The Supreme Court of Indiana has held, by a 3 to 2 vote, that it is the duty of the trial court to *strictly* comply with the terms of this statute. *German v. State,* (1981) Ind., 428 N.E.2d 234. The *German* case further stated that:

"other cases, to the extent that they held that the statutory obligation of the trial judge to inform the defendant that a plea of guilty operates as a waiver or surrender of the above enumerated rights may be met by something short of a direct statement to that effect, are overruled."

428 N.E.2d at 237.

Following the *German* decision, the Supreme Court has continued to apply this form over substance construction to the plea statutes. *See Davis v. State,* (1983) Ind., 446 N.E.2d 1317; *Early v. State,* (1982) Ind., 442 N.E.2d 1071; *Romine v. State,* (1982) Ind., 431 N.E.2d 780. The present state of the law, no matter how illogical it may be, is best stated in *Early v. State, supra.* There the Supreme Court held that:

"Although the plea bargain agreement in the instant case reflects that the petitioner understood the rights therein enumerated, including the right to compulsory process, it did not come from the judge, and it did not come at the time of the waiver. In order for rights to be voluntarily waived, they must be known and understood at the time of the waiver. The waiver occurs simultaneously with the guilty plea; hence the judge must ascertain, and the record must reflect, that the defendant understands his rights and the effect of a guilty plea at that very moment. That is the critical time. What he knew or did not know at prior times, including the time when he signed the plea agreement, is immaterial except insofar as it may be an aid to the hearing judge and to us in determining what he comprehended and understood at the time the plea is given."

442 N.E.2d at 1072.

Two Justices have continued to dissent from the results reached by the majority's mechanistic construction and application of this statute. These cases have produced results which go beyond the United States Supreme Court cases, including *Boykin v. Alabama,* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and *North Carolina v. Alford,* (1970) 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The results are also clearly irreconcilable with earlier Indiana cases construing this statute, such as *McDowell v. State,* (1981) Ind., 422 N.E.2d 1229. The rationale behind the Indiana statute is to insure that when a defendant enters a guilty plea, he understands all of his rights enumerated in the plea agreement and freely, voluntarily, and knowingly waives all such rights. To the extent that present case law requires the ritualistic invocation of these rights *at the time the plea is entered,* it goes beyond the intention of the State's Legislature.

To exemplify the results reached under the present construction, one need only review the cases reported. Most recently, in *Beahan v. State,* (1983) Ind.App., 449 N.E.2d 1183, this Court reversed a guilty plea where the trial court failed to contemporaneously advise the defendant of her right to have the State prove her guilt beyond a reasonable doubt. However, the

---

1. This statute was repealed, modified and re-enacted as Ind.Code § 35–35–1–2 (1982 Burns Supp.). However, the effective date for the recodification was September 1, 1982. Therefore, the earlier version applies to this case.

record clearly indicated that defendant was not only advised of this right, but exercised that right at trial before entering a guilty plea. Her plea was, without a doubt, entered voluntarily and knowingly.

In *Davis v. State, supra,* and *Early v. State, supra,* the Supreme Court reversed guilty pleas because defendants were not advised of their right to have compulsory process for obtaining witnesses. The records produced in both cases indicated that not only did the defendants *understand* this right, but they actually *exercised* that right during contemporaneous trials. It is difficult to believe that these defendants did not know of this right, or realize that the right was waived by entering a plea of guilty.

In the case at hand, the record establishes that appellant was informed of his right to have the State prove guilt beyond a reasonable doubt during the preliminary instructions. He again was informed of this right while witnessing his co-defendant's guilty plea, immediately prior to his own plea. For all practical purposes, this plea was knowingly and voluntarily entered, and appellant clearly understood that his rights were thereby waived.

While this seems to be a proper result, it is not the law in Indiana. Because the trial judge failed to inform appellant of the right to be proven guilty beyond a reasonable doubt, *at the time of the* waiver and entry of his guilty plea, this Court is constrained to reverse.

Because the judgment is reversed, appellant's second alleged error need not be considered.

The judgment of the trial court is reversed and remanded, with instructions to vacate the guilty plea, and permit the defendant to enter a plea of not guilty, setting the matter for trial.

GARRARD, J., concurs in result.

STATON, J., concurs in result with opinion.

STATON, Judge, concurring in result.

I concur in result because I wish to disassociate myself from the remarks and "rationale" of the Majority. The repeated failures of trial judges to advise defendants of their several statutory rights before accepting guilty pleas is ample evidence that the system of justice is not altogether perfect. Assuming or guessing what a defendant knows or understands his rights to be from a written record of the proceedings is to engage in pure sophistry.

The reading of jury instructions is grossly inadequate to determine whether a defendant understands his statutory rights when entering a guilty plea. Jury instructions are for the jury and not solely for the defendant. This is the understanding at trial. Many times the instructions read by the judge to the jury are long and complex. Quite often, the defendant's thoughts at the defense table are on the "main event"—the testimony of the witnesses and the verdict of the jury. Sometimes a criminal defendant's thoughts are so frozen in fear and apprehension that the defense counsel can expect little assistance from him during the trial. Too, the defendant, on the instructions of his defense counsel, may be intensely avoiding eye contact with members of the jury and trying to keep his facial expressions free from the emotions swelling up inside of him. This often conflicts with his ability to concentrate and fully understand the full meaning of instructions being read by the judge to the jury. Without exhausting the possibilities of a defendant's state of mind during the reading of instructions, it is a fair assumption that he does not always understand and remember the instructions of the judge to the jury—nor does the juror for that matter.

Compare the less pressured position of the juror in the courtroom listening to the instructions being read by the judge. His liberty is not in jeopardy nor is he singularly the target of the state with its awesome power. His position is that of an observer, listener, and fact finder. He is a member of a group of indifferent jurors who are experiencing the testimony and other evi-

dence for the first time. He is told that he must listen to the instructions very carefully so that his deliberations in the juryroom and the verdict of the jury will be proper and in accordance with the law. Yet, there are numerous trials where the jurors have requested that the instructions be re-read to them because they did not understand them on the first reading or did not remember one or more of the instructions. It seems ludicrous to me that we should do less for the defendant whose very liberty hangs in the balance.

Furthermore, the re-reading of all the instructions to a jury may take as much as an hour or more while the simple advisement of the defendant's rights takes only a few minutes. When a guilty plea is entered by a defendant, many days of trial are usually saved which can be used for the disposition of other pending cases. The requirement that the trial judge take a few minutes to advise the defendant of his statutory rights and make a record of the advisement does not seem to me an unreasonable exchange of effort and time.

Assuming or guessing from an entire record whether a defendant voluntarily, knowingly, and understandingly entered his plea of guilty at the time it was accepted by the trial court is a risky business at best. I concur in result.[1]

---

1. I have not discussed Joshua's presence at Turman's plea of guilty. The trial court was not addressing Joshua nor is there any evidence that Joshua was not conferring with his counsel at any time during the entry of Turman's plea. Certainly the law requires more formality than suggested by the Majority before accepting a guilty plea and depriving an individual of his liberty. I do not think mere presence in the courtroom can substitute for a direct inquiry by the court to the defendant as to the voluntariness of his plea and whether he understands the consequences of his plea.